UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-14097-CIV-MOORE/MAYNARD

IVETTE ARCE,

     **Plaintiff,**

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

     **Defendant.**

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before me on Plaintiff's Motion for Summary Judgment [DE 15]; and Defendant's Motion for Summary Judgment/Response [DE 18].  Having reviewed the pleadings, the administrative record, and having heard oral argument of counsel, I respectfully **RECOMMEND** that Defendant's administrative decision be **AFFIRMED** for the reasons set forth below.

## BACKGROUND

This case involves a determination of Plaintiff Ivette Arce's ("Plaintiff's") application for disability insurance benefits filed on March 27, 2018.  Plaintiff alleged disability beginning on March 14, 2018[1] due to herniated cervical discs; status-post anterior cervical discectomy and

---

[1] Plaintiff amended the alleged onset date to March 31, 2018, at the hearing before the Administrative Law Judge.  DE 12 at 15.

fusion; status-post lumbar discectomy; status-post right total hip replacement and obesity.  R. 10, 20, 342-48.[2]

Plaintiff was 47 years old on her alleged onset date with a high school education and past relevant work as a stock clerk and corrections officer.  R. 27, 342, 361.  Plaintiff's application was denied initially and upon reconsideration.  R. 250-58, 262-74.  At Plaintiff's request, Administrative Law Judge ("ALJ") Denise Pasvantis held a hearing on April 2, 2020.  R. 36-62. Plaintiff was represented by Michael Shiffman, Esq.  R. 10.  The ALJ issued an unfavorable decision on September 4, 2020, finding Plaintiff not disabled from March 18, 2018, through the date of the decision.  R.10-29.

On December 22, 2020, the Appeals Council denied Plaintiff's timely request for review, making the ALJ's decision the final decision of the Commissioner.  R. 1-5.  Plaintiff has exhausted her administrative remedies and now seeks judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

To qualify for Social Security benefits, a claimant must show that she is disabled.  *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); 20 C.F.R. §§ 404.1512(a), 416.912(a).  The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

---

[2] A 627-page certified transcript [DE 12] contains the entire administrative record.  The transcript index [DE 12 at 2-5] identifies each document or set of documents by exhibit number and description.  I will cite to the transcript as "R." followed by the page number(s) listed on the index and located at the bottom right-hand corner of each page.

A "physical or mental impairment" is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

A disability benefits claim follows a multi-layered process before it can be reviewed in federal court. A claimant first applies to a state agency for disability determinations, 42 U.S.C. § 421(a), after which the claimant is entitled to an evidentiary hearing before an ALJ. *Heckler v. Day*, 467 U.S. 104, 106–07 (1984). An ALJ must perform a "five-step sequential evaluation" to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines if a claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"); (4) can perform past relevant work based on a residual functional capacity ("RFC") assessment; and (5) retains the ability to perform any work in the national economy. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018); *Hines–Sharp v. Comm'r of Soc. Sec.*, 511 Fed. Appx. 913, 915 n.2 (11th Cir. 2013). If an individual is found disabled or not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 416.920(a).

A claimant may appeal an ALJ's unfavorable decision to an Appeals Council that must review the case and determine if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Heckler*, 467 U.S. at 106-07; 20 C.F.R. § 404.970(a). After completing the foregoing administrative process, a claimant may seek review in federal court. 42 U.S.C. § 405(g); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007).

Under governing regulations, the Social Security Administration conducts its "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, social security administrative hearings "are inquisitorial rather than adversarial." *Washington*, 906 F.3d at 1364 (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

On review in federal court, the scope of review is limited to determining if (1) substantial evidence supports the Commissioner's findings, and (2) the correct legal standards were applied. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). To make this determination, a reviewing court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.*

In testing for substantial evidence, a court may not "reweigh the evidence" or "decide the facts anew." *Winschel*, 631 F.3d at 1178. Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive, and the court must defer to the ALJ's decision even if

the evidence preponderates against it. *Crawford*, 363 F.3d at 1158-59. However, the court will not "merely rubber-stamp a decision ... [and] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1257 (11th Cir. 2019); *see also Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021) ("Within this narrowly limited role, however, the federal courts 'do not act as automatons' … '[w]e retain an important duty to 'scrutinize the record as a whole' and determine whether the agency's decision was reasonable") (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). Remand is appropriate for further factual development where the record reveals evidentiary gaps that result in unfairness or clear prejudice. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1358 (11th Cir. 2018).

A reviewing court is also required to review the ALJ's decision to determine if the correct legal standards were applied. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide sufficient reasoning for determining that the proper legal analysis has been conducted, then the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## THE ALJ'S DECISION

The ALJ in this case proceeded through the five-step analysis as follows: At step one, the AL found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. R. 13. At step two, the ALJ found that Plaintiff had the following severe impairments: herniated cervical discs, status-post anterior cervical discectomy, and fusion; status-post lumbar discectomy; status-post right total hip replacement and obesity.[3] *Id.* At step three, the ALJ found

---

[3] As discussed *infra*, the ALJ also noted that Plaintiff had been diagnosed with hypertension, cystocele, vitamin D deficiency, iron deficiency anemia, depressive disorder and anxiety disorder but did not find these impairments to be severe. R. 13.

that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment in the Listings.  R. 18-19.  As a predicate to step four, the ALJ found that Plaintiff had the RFC to perform work at the sedentary level with the following additional limitations: lift/carry 10 pounds occasionally, less than 10 pounds frequently, stand and/or walk for 2 hours in an 8-hour workday, sit 6 hours in an 8-hour workday, frequently climb ramps and stairs, balance, stoop, kneel, crouch, and reach in any direction with her right upper extremity, and occasionally climb ladders, ropes, and scaffolds and crawl.  R. 19, 26.  The ALJ further determined that Plaintiff must avoid concentrated exposure to extreme cold, vibration, and hazards.  R. 19.  At step four, based on testimony from a vocational expert ("VE"), the ALJ found that Plaintiff could not perform her past relevant work as a stock clerk or corrections officer. R. 27.  The ALJ proceeded to step five and determined that jobs existed in significant numbers in the national economy that Plaintiff could perform.  R. 28.  Specifically, based upon testimony from the VE, which the ALJ found to be consistent with information in the Dictionary of Occupational Titles ("DOT"),[4] the ALJ determined that Plaintiff could perform the requirements of: (1) Order Clerk with 100,000 positions in the national economy; (2) Telephone Information Clerk with 60,000 positions in the national economy; and (3) Charge Account Clerk with 35,000 positions in the national economy.  R. 28-29.  Therefore, the ALJ concluded that Plaintiff had not been disabled

---

[4] The Social Security Administration primarily relies upon the DOT for "information about the requirements of work in the national economy . . . at steps 4 and 5 of the sequential evaluation process."  SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000).  *See also* 20 C.F.R. § 416.966 (explaining that the Social Security Administration takes administrative notice of reliable job information, including the DOT).  Information about the DOT, which was last updated in 1991, is provided on the website of the U.S. Department of Labor, Office of Administrative Law Judges ("OALJ"), including a list of sources for obtaining copies of it.  OALJ, http://www.oalj.dol.gov/libdot htm, last visited Aug. 10, 2022.  As OALJ explains, the DOT "was developed in response to the demand . . . for standardized occupational information to support job placement activities." OALJ, http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTINTRO.HTM, last visited Aug. 10, 2022.

within the meaning of the Social Security Act from March 31, 2018, through the date of the

decision.  R. 29.

## **DISCUSSION**

Plaintiff makes three arguments in her motion for remand:

(1) The appointment of Andrew Saul as a single commissioner of the Social Security Administration who is removable only for cause and serves a longer term than that of the President violates the Separation of Powers Clause of the United States Constitution.  Accordingly, the administrative Decision in this case, issued and affirmed by administrative and appeals judges who derived their authority from Mr. Saul, is constitutionally defective.

(2) The ALJ's RFC assessment is not supported by the substantial evidence of record because it contains no corresponding mental limitations.

(3) The Vocational Expert's Testimony does not constitute "substantial evidence" upon which the ALJ could properly rely.

At oral argument and thereafter, Plaintiff withdrew arguments 1 and 3.  *See* DE 20 and DE  21.

Therefore, this Report and Recommendation addresses only argument 2 that the ALJ erred by not

including mental limitations in the RFC to account for Plaintiff's mental impairments.

Plaintiff contends that the ALJ's RFC assessment is not supported by substantial evidence

because it contains no limitations corresponding to Plaintiff's mental impairments.  DE 15 at 7-

11.  In support, Plaintiff relies on *Schink v.Comm'r*, 935 F.3d 1245, 1268 (11th Cir. 2019) (per

curiam), where the Eleventh Circuit found an ALJ's decision was not supported by substantial

evidence because the ALJ failed to consider the claimant's mental impairments in evaluating the

claimant's RFC.  *Schink* specified that an ALJ is required to consider even non-severe mental

impairments when assessing a claimant's RFC.  Plaintiff asserts that the ALJ in this case

"committed the very same error" as the ALJ in *Schink* "by failing to include any and all functional

limitations that could reasonably arise" from Plaintiff's depression and anxiety.  DE 15 at 8.

Plaintiff further argues that the ALJ should have conducted a function-by-function analysis of Plaintiff's mental impairments in determining her RFC.  DE 15 at 7-8.  Because the ALJ did not do so in the RFC portion of the opinion, Plaintiff contends there is no way to determine whether Plaintiff can meet the demands of the positions the ALJ determined Plaintiff could perform given her mild mental limitations.  *Id.* at 10-11.  For example, all three positions the ALJ found Plaintiff could perform require a Reasoning Level of 3, meaning that Plaintiff has to "[a]pply commonsense understanding to carry out instructions," and must "deal with problems involving several concrete variables in or from standardized situations."  *Id.* at 10.  Plaintiff argues that these demands could exceed her capacity given the mild mental limitations that the ALJ found at step two, which apply in the functional areas of "understanding, remembering, or applying information" and "concentrating, persisting or maintaining pace." *Id.* at 10.  Thus, Plaintiff posits that the ALJ failed to determine her mental capacity to perform the jobs the ALJ said she could do because the ALJ did not articulate function-by-function what, if any, limitations Plaintiff might encounter as a result of her non-severe mental impairments.  *Id.* at 11.

Plaintiff also contends that the ALJ erred by not stating how persuasive the ALJ found the opinion of state agency reviewing psychologist, Dr. Heather Hernandez.  *Id.* at 9.  At oral argument, Plaintiff's counsel focused primarily on this point, pointing out how the ALJ failed to state specifically how persuasive the ALJ found Dr. Hernandez's opinion to be despite the new medical opinion regulations which state that the agency will articulate "how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record." 20 C.F.R. 1520c(b).  According to Plaintiff's counsel, this failure to state how persuasive the ALJ found Dr. Hernandez' opinion rendered Plaintiff unable to adequately challenge whether the ALJ's reliance on Dr. Hernandez' opinion was supported by substantial evidence.

Defendant responds that the ALJ's RFC determination is supported by substantial evidence and Plaintiff failed to meet her burden of proving that she was disabled.  DE 18 at 12-16. Specifically, Defendant contends that Plaintiff failed to demonstrate any basis in the record for the ALJ to assess any mental limitations in the RFC based on Plaintiff's mental impairments.  *Id.* at 13.  Defendant says the ALJ evaluated all of the evidence of record and properly determined that Plaintiff's mental impairments would not cause any significant work-related impairments.  *Id.*

To understand the ALJ's decision not to include restrictions based on Plaintiff's mental impairments in the RFC, the ALJ's handling of Plaintiff's mental impairments at step two must first be considered.  Thus, this Report discusses the ALJ's step two assessment before proceeding to address Plaintiff's arguments.

### A.      The ALJ's Step Two Assessment of Plaintiff's Mental Impairments

At step two, an ALJ considers the severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii).  A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work and must last continuously for at least twelve months.  *See* 20 C.F.R. § 404.1505(a).  This step two inquiry "acts as a filter" so that insubstantial impairments will not be given much weight.  *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 950 (11th Cir. 2014) (quoting *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).  While the standard for severity is low, the severity of an impairment "'must be measured *in terms of its effect upon ability to work.*'"  *D'Andrea v. Comm'r of Soc. Sec. Admin.*, 389 F. App'x 944, 945 (11th Cir. 2010) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (emphasis added). Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1522(b); *Titles II & XVI: Med. Impairments That Are Not Severe*, SSR 85-28, 1985 WL 56856, at *4.  "[B]eyond the second step, the ALJ must consider the entirety of the claimant's

limitations, regardless of whether they are individually disabling." *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841-842 (11th Cir. 2014) (internal citations omitted).

Here, at step two, the ALJ found Plaintiff had both severe and non-severe impairments. Specifically, the ALJ determined that Plaintiff had the severe physical impairments of herniated cervical discs, status-post anterior cervical discectomy and fusion; status-post lumbar discectomy; status-post right total hip replacement and obesity.  R. 13.  The ALJ found that Plaintiff's medically determinable impairments of hypertension, cystocele,[5] vitamin D deficiency, iron deficiency anemia, depressive disorder, and anxiety disorder, considered singly and in combination, did not rise to the severe level because they did not cause more than a minimal limitation in Plaintiff's ability to perform basic work activities.  R. 13.  Regarding Plaintiff's hypertension, vitamin D deficiency, and iron deficiency anemia, the ALJ found that these were controllable with medication, vitamins, and diet.  R. 13.  As to cystocele, the ALJ found that Plaintiff had not followed through on recommended repair; however, the issue was nonetheless adequately addressed by the use of small pads.  R. 14.

Regarding Plaintiff's depression and anxiety, the ALJ reviewed the record evidence and concluded that they caused no more than minimal work functional limitations.  The ALJ noted that Plaintiff's medical record "generally shows that she has not required specialized mental health treatment for her complaints."  R. 14 (citing R. 268).  Indeed, the ALJ acknowledged that Plaintiff did not even allege a mental disorder in her initial application for disability benefits, but alleged depression and anxiety only at the reconsideration level.  R. 14.  The ALJ further noted that Plaintiff's records indicated no treatment for a mental disorder other than Valium prescribed during

---

[5] A cystocele, known also as a fallen bladder, may result in, among other things, urine leakage or urinary incontinence due to weakened muscles and connective tissue supporting the bladder and vaginal walls.  *See* National Institute of Diabetes and Digestive and Kidney Diseases, https://www.niddk.nih.gov/health-information/urologic-diseases/cystocele, last visited Aug. 10, 2022.

an emergency room visit.  R. 15.  Specifically, on June 27, 2018, Plaintiff was discharged from an emergency room visit due to complaints of back and hip pain, and an existing Valium prescription was extended to treat anxiety.  R. 14; R. 467.  The ALJ also considered findings of normal mental status contained in Plaintiff's medical records.  On November 19, 2019, Plaintiff was examined by Dr. Jayshree Matadial due to complaints of abdominal pain.  R. 503.  Dr. Matadial noted upon examination that Plaintiff's psychological mood was normal, and her eye contact was good.  R. 15; R. 503.  Upon follow-up on December 13, 2019, Dr. Matadial again noted that Plaintiff's mood was normal, and her eye contact was good.  R. 15; R. 511.  On February 11, 2020, Plaintiff visited Nurse Practitioner Judy Dasilva to get referrals to pain management and an orthopedic specialist.  R. 612.  Nurse Dasilva's treatment notes indicated that Plaintiff was positive for sleep disturbance due to pain but was negative for psychiatric symptoms.  R. 15 (citing R. 613).  Plaintiff's mood and affect were normal, her behavior was normal and her judgment and thought content were normal.  R. 15 (citing R. 614).

The ALJ also considered Plaintiff's consultative examinations.  First, the ALJ discussed the initial consultative evaluation, on May 12, 2018, by Dr. Kathleen Jeannot, which evaluated Plaintiff's chief complaints of neck pain, knee pain, bilateral hip pain, bilateral shoulder pain and lower back pain.  R. 14-15; R. 455.  The ALJ noted, among other things, that Dr. Jeannot observed Plaintiff's mental status was normal.  R. 15; R. 459.  Plaintiff complained of difficulty with some household chores and shopping due to pain, not a mental disorder.  R. 15. Second, the ALJ discussed the consultative psychological examination by Dr. Theodore G. Williams on August 30, 2018.  R. 15; R. 495-501.  In particular, the ALJ noted that Dr. Williams observed that Plaintiff's behavior was consistent with depression and that she cried during the evaluation.  R. 15 (citing R. 498).  Plaintiff reported to Dr. Williams that she experienced problems with attention and

concentration and had problems getting along with others due to the level of her depression. R.

15 (citing R. 495-501). Despite Plaintiff's self-reports, the ALJ noted that

> Dr. Williams pointed out that the claimant did not present as someone who is easily confused or one who experiences significant comprehension problems. Moreover, she did not experience any problems following directions. She also responded well to encouragement and was willing to offer a guess when she did not have an answer to a task or questions presented to her.

R. 15 (citing R. 501). Dr. Williams also observed that Plaintiff did not experience difficulty

managing her own affairs. The ALJ summarized Dr. Williams' findings as follows:

> Dr. Williams assessed claimant with provisional diagnostic impressions of a recurrent, moderate to severe major depressive disorder without psychotic features, and a history of anxiety, and while (rule out) borderline personality disorder was indicated, it emphasized that this was not as "ruled out." Overall, the diagnosis by Dr. Williams seem[s] mostly based on the claimant's reports.

R. 15.

Based on the record evidence, the ALJ found that Plaintiff's mental impairments were not

severe. The ALJ noted that the reviewing psychologist, Dr. Heather Hernandez, made this same

finding in her report dated September 17, 2018. R. 14 (citing R. 268). In making this finding, the

ALJ considered the four broad areas of mental functioning, known as the "paragraph B" criteria.

R. 14-18; 20 C.F.R. § 404.1520a(c)(3). These four areas consist of: (1) understanding,

remembering, or applying information; (2) interacting with others; (3) concentrating, persisting,

or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). If an

ALJ finds that the degree of limitation in these four areas is "none" or "mild," then the ALJ will

generally conclude that the mental impairment is not severe. 20 C.F.R. § 404.1520a(d)(1). "An

impairment or combination of impairments is not severe if it does not significantly limit [a

claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a).

Regarding Plaintiff's mental functioning, the ALJ found that Plaintiff had "mild limitation" in the first area of understanding, remembering, or applying information and in the third area of concentrating, persisting, or maintaining pace. R. 16-18. The ALJ found, however, that Plaintiff had "no limitation" interacting with others or adapting or managing herself. R. 16-18.

The ALJ set forth exactly the same evidence in support of her finding that Plaintiff had a mild limitation in the first and third areas of mental functioning. R. 16-17. The ALJ noted that Plaintiff was independent in self-care, did not need reminders to take her medicine, and was able to shop by phone, drive, count change, and use her debit card. Plaintiff said she could pay attention for only 8 to 10 minutes but that was because of her pain not a mental disorder. Plaintiff's mental status was generally observed to be normal with normal judgment and thought content. The ALJ also noted Plaintiff's testimony regarding her part-time work at the Walmart deli/bakery through at least 2019. R. 16-17. The only mental limitation that surfaced was Plaintiff's self-report that spoken instructions had to be repeated sometimes but that Plaintiff did well with written instructions if left alone. R. 16 (citing R. 387). Given the evidence, the ALJ found that Plaintiff had mild limitation in areas one and three and noted that these findings were consistent with the findings of reviewing examiner, Dr. Hernandez. R.16-17 (citing R. 267-68).

In terms of functional area two—interacting with others—the ALJ explained in detail why she found that Plaintiff had no limitation. While the ALJ noted Plaintiff's subjective complaints about being easily aggravated due to unpredictable physical pain, the ALJ observed that Plaintiff herself reported no problems getting along with authority figures. R. 16 (citing R. 387-88). The ALJ also noted Plaintiff's report that she was once fired from a job not because of problems getting along with others but because she created a conflict in her role by befriending someone. R. 16; R. 388. The ALJ further noted that Plaintiff regularly went to work, attended church, and lived with

various family members without issue.  R. 16-17.  In particular, the ALJ noted that Plaintiff's part-time job at the Walmart deli/bakery, which she engaged in at least through 2019, involved a significant level of interacting with others.  R. 22.  In addition, Dr. Williams reported that Plaintiff engaged in decent eye contact and was cooperative and motivated with a generally normal mood.  R. 17 (citing R. 499).  The ALJ concluded by noting that her finding was consistent with reviewing agency psychologist, Dr. Hernandez.  R. 17.

As to functional area four—adapting or managing oneself—the ALJ also explained in detail why she found Plaintiff had no limitation.  Specifically, the ALJ observed that Plaintiff reported that she was independent with self-care, such as bathing, dressing, feeding herself and her only complaints related to her physical impairments.  R. 17 (citing R. 382-89).  Plaintiff did not need reminders to take her medication, she went outside every day, she was able to drive, shop by phone and use her debit card, she regularly went to work and attended church, and she watched television, read, and listened to music.  R. 17-18.  Further, the ALJ noted that the medical evidence confirmed Plaintiff's ability to perform self-care, drive and work part-time, and also indicated that Plaintiff was able to interact with others, engage in good eye contact and be cooperative and motivated.  R. 18 (citing R. 454-60, 495-501, 503, 511, 614).  Again, the ALJ concluded with a notation that her finding was consistent with that of reviewing psychologist, Dr. Hernandez.[6]  R. 18.

In sum, the ALJ found that the Plaintiff's "medically determinable mental impairments of depressive disorder and anxiety disorder, considered singly and in combination, do not cause more than a minimal limitation in the claimant's ability to perform basic mental work activities and are

---

[6] The ALJ's decision mis-states at this point, in an obvious scrivener's error, that her finding of "mild" limitation was consistent with the finding of Dr. Hernandez.  R. 18.  On the prior page of the ALJ's decision, she stated that her finding was "no" limitation.  R. 17.  In addition, Dr. Hernandez found no limitation in mental functioning area four.  R. R. 267.

therefore non severe." R. 14.  Upon review of the record, I find the ALJ's determination in this regard to be supported by substantial evidence.  Plaintiff does not argue otherwise and fails to point to any conflicting record evidence regarding the ALJ's severity findings.  Thus, I find no error by the ALJ in evaluating Plaintiff's mental impairments at step two of the analysis.

### B.      The ALJ's Step Four RFC Assessment

Plaintiff takes issue with the ALJ's failure to include mental restrictions in assessing Plaintiff's residual functioning capacity at step four. DE 15 at 8-9.  The ALJ found that Plaintiff had the RFC to perform sedentary work with the additional limitations of lifting and/or carrying 10 pounds occasionally and less than 10 pounds frequently, standing and/or walking 2 hours in an 8-hour workday, sitting 6 hours in an 8-hour workday, frequently climbing ramps and stars, balancing, stooping, kneeling, crouching, and reaching in any direction with the right upper extremity, occasionally climbing ladders, ropes, and scaffolds and crawling and avoiding concentrated exposure to extreme cold, vibration, and hazards.  R. 19, 26.  The ALJ did not include any mental limitations in determining that Plaintiff had the ability to perform work at the sedentary exertional level with limitations as described.  *Id.*

An ALJ must assess a claimant's residual functioning capacity, which is defined as the most a claimant can still do despite her limitations.  20 C.F.R. § 404.1545(a).  In determining the RFC, the ALJ must consider all of the claimant's medically determinable impairments, including those that are not "severe."  20 C.F.R. § 404.1545(a)(2); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019); *see also Martinez v. Comm'r of Soc. Sec. Admin.*, No. 20-CV-22812-RNS, 2022 WL 539212, at *2 (S.D. Fla. Feb. 23, 2022);  *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1064–65 (11th Cir. 2021)).  As the regulations provide:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function

> basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545
> and 416.945. Only after that may RFC be expressed in terms of the exertional levels
> of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p, 1996 WL 374184; *see also Freeman v. Barnhart*, 220 F. App'x 957, 959 (11th Cir.

2007) (quoting same from SSR 96-8p, 1996 WL 374184).  Paragraph (c) of 20 CFR 404.1545,

which specifically addresses mental abilities, states:

> When we assess your mental abilities, we first assess the nature and extent of your
> mental limitations and restrictions and then determine your residual functional
> capacity for work activity on a regular and continuing basis. A limited ability to
> carry out certain mental activities, such as limitations in understanding,
> remembering, and carrying out instructions, and in responding appropriately to
> supervision, co-workers, and work pressures in a work setting, may reduce your
> ability to do past work and other work.

20 C.F.R. §§ 404.1545(c) and 416.945(c).

Here, immediately prior to making her RFC findings, the ALJ stated that "[t]he following

residual functional capacity assessment reflects the degree of limitation the undersigned has found

in the 'paragraph B' mental function analysis."  R. 18.  In so stating, the ALJ acknowledged that

the limitations in the paragraph B criteria were not an assessment of Plaintiff's RFC and that steps

4 and 5 required a more detailed assessment.  *Id.*

However, the ALJ also stated generally that "[t]he [ALJ] has considered all of the

claimant's medically determinable impairments, including those that are not severe, when

assessing the claimant's residual functional capacity."  R. 13.  Despite this statement, the ALJ's

RFC assessment only mentions "mental disorder" and "mental status" in reference to Dr. Jeannot's

consultative examination on May 18, 2018.  R. 22-23.  In doing so, the ALJ noted that Dr. Jeannot

found Plaintiff's mental status was normal and Plaintiff's complaints of difficulties with some

household chores and shopping were due to pain, not a mental disorder.  R. 22-23. The ALJ did

not otherwise discuss Plaintiff's mental impairments at steps 4 or 5 and did not include mental restrictions in the RFC.  Plaintiff argues that this was in error.

Plaintiff relies upon the Eleventh Circuit's *Schink* decision to support her argument that the ALJ committed reversible error by not explicitly discussing how, or if, Plaintiff's RFC should have been further limited due to her mental disorders of depression and anxiety.  In *Schink*, the Eleventh Circuit remanded the case to the Commissioner, in part, because "[s]evere or not, the ALJ was required to consider Schink's mental impairments in the RFC assessment but evidently failed to do so." *Schink*., 935 F.3d at 1269.  *Schink* is quite different than the record before this Court, however.  In *Schink*, the claimant "produced extensive medical records," and the Eleventh Circuit noted that the "records indicate[d] Schink had a history of bipolar disorder and a family history of depression." *Id.* at 1252.  Both Schink's treating psychiatrist and treating psychologist determined that Schink had limitations due to his mental disorders.[7]  For example, Schink's psychologist opined, among other things, "Schink had 'extreme' limitations in his ability to behave predictably, reliably, and in an emotionally stable manner." *Id.* at 1255.  Schink's psychiatrist opined, among other things, that Schink had "'marked' limitations in [his] ability to behave in a predictable, reliable, and emotionally stable manner, and in his ability to tolerate customary work pressures." *Id.*  Schink was also hospitalized for one week and "placed on supervision every fifteen minutes to ensure his safety." *Id.*  After discussing Schink's extensive medical history indicating treatment for mental impairment, the Eleventh Circuit noted that the ALJ failed to "include any

---

[7] Because *Schink* involved claims filed before March 27, 2017, it was decided under the treating physician rule stating that "[t]he ALJ must give a treating physician's opinion 'substantial or considerable weight unless good cause is shown to the contrary.'" *Schink*, 935 F.3d at 1259 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)). "Claims filed on or after that date are governed by a new regulation prescribing somewhat different standards for the handling of opinions from treating physicians." *Id.* at n.4.

mental capacities or limitations in the assessment of Schink's [RFC]."[8] *Id.* at 1257. Although the ALJ in *Schink* stated "that he considered 'all symptoms[,]" the Eleventh Circuit faulted the decision for having no discussion of "Schink's testimony that he had previously received short-term disability benefits based on his bipolar-disorder diagnosis, that he could no longer perform work as a car salesman because he had become argumentative with managers and customers, and that he was prescribed medication for bipolar disorder." *Id.*

Here, unlike in *Schink*, Plaintiff fails to demonstrate that she has any limitations in her capacity to work as a result of her mental disorders. There is no evidence of treatment for her mental disorders of depression and anxiety other than a prescription for Valium after an emergency room visit for pain. R. 14; R. 467. Plaintiff did not mention any restrictions or limitations resulting from depression or anxiety at her hearing before the ALJ and there is no indication in the transcript that Plaintiff has any mental limitations resulting from her mental impairments. As noted above, Plaintiff's function report is similarly devoid of any mental limitations resulting from depression and anxiety. Plaintiff stated only that sometimes spoken instructions had to be repeated; however, she did well with written instructions if left alone. R. 387. The consultative examiner, Dr. Williams, observed that Plaintiff did not present as someone who was easily confused or as one who experienced significant comprehension problems, or problems following directions. R. 16-17 (citing R. 499). Moreover, Plaintiff's treatment records indicate that Plaintiff's complaints relate to physical pain and not to mental disorders. R. 503, 612-14. Thus, on the record before the

---

[8] "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8P, 1996 WL 374184, at *6 (S.S.A.). The assessment of functional limitations resulting from mental impairments "is a complex and highly individualized process that requires [consideration of] multiple issues and all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation." 20 C.F.R. §§ 404.1520a(c)(1) and 416.920a(c)(1).

ALJ and this Court, Plaintiff's case is distinguishable from *Schink* and noteworthy for its lack of evidence as to Plaintiff having any significant limitations on her ability to work resulting from depression and anxiety. The ALJ considered and discussed all relevant evidence pertaining to Plaintiff's ability to do work-related activities as required by the function-to-function analysis and found no limitations based on mental disorders.  Substantial evidence supports the ALJ's finding in this regard.  Thus, Plaintiff's claim that the ALJ committed reversible error by failing to include mental limitations in her RFC and by failing to specifically articulate findings with respect to her functional limitations and work-related abilities on a function-by-function basis fails.  *See, e.g., Gully v. Astrue*, No. 1:08CV245-WC, 2009 WL 1580416, at *3 (M.D. Ala. June 3, 2009) (citing *Freeman v. Barnhart*, 220 F. App'x 957, 960 (11th Cir. 2007)) ("An ALJ's failure to more specifically and explicitly set forth his findings with respect to a claimant's functional limitations and work-related abilities on a function-by-function basis is excusable where it is apparent the ALJ did consider all of the evidence." ).

### C.  The ALJ's Assessment of Dr. Hernandez' Medical Opinion

Plaintiff's remaining argument is that the ALJ erred by relying exclusively on the opinion of Dr. Hernandez in deciding not to include mental restrictions in Plaintiff's RFC and by failing to expressly state how persuasive the ALJ found Dr. Hernandez' opinion.  DE 15 at 9.

Plaintiff's first assertion – that the ALJ relied exclusively on Dr. Hernandez' opinion in finding that Plaintiff had no work-related mental limitations – is plainly wrong.  As previously outlined, the ALJ's findings regarding Plaintiff's mental limitations are supported by substantial evidence, including citations to relevant medical evidence, Plaintiff's consultative exams, Plaintiff's self-reports, and Plaintiff's ability to perform various activities of daily living.  The ALJ

did not rely solely on Dr. Hernandez' opinion in declining to include mental restrictions in Plaintiff's RFC and the ALJ's decision in this regard is supported by substantial evidence.[9]

As for Plaintiff's contention that the ALJ failed to state how persuasive the ALJ found Dr. Hernandez' opinion, while it is true that the ALJ did not use the word "persuasive" in discussing Dr. Hernandez' findings, even Plaintiff acknowledges that the ALJ noted "on at least four separate occasions that the ALJ's findings were "consistent with" Dr. Hernandez' opinion.  DE 15 at 9 (citing R. 16-18, referring to R. 267-68).  Thus, it appears that the ALJ found Dr. Hernandez' opinion to be persuasive as it was consistent with the ALJ's conclusion in all material respects.

The Social Security Administration revised its regulations regarding the consideration of medical evidence in claims filed on or after March 27, 2017.  *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017).  Plaintiff filed her claim after March 27, 2017, so the revised regulations apply in this action.  For disability cases filed after March 27, 2017, an ALJ does not defer or give any specific evidentiary weight to a medical opinion. 20 CFR §§ 404.1520c(a); 416.920c(a).  Instead, an ALJ assesses the persuasiveness of a medical source's opinions in light of the following five factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff, including the length, frequency, and purpose of the examining relationship; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 CFR §§ 404.1520c(c); 416.920c(a) – (c).  Of these factors, supportability and consistency are the most important, and the ALJ must explain its consideration of supportability and consistency in

---

[9] Plaintiff argues that Dr. Hernandez' report should not be relied upon because Dr. Hernandez failed to conduct a function by function assessment of Plaintiff's RFC and instead merely summarized the record evidence before finding Plaintiff's mental impairments were non-severe. DE 15 at 9 (citing Tr. 268). Plaintiff has offered no legal support for her position that a reviewing state agency consultant must perform a function-by-function analysis.  Moreover, Dr. Fernandez' report addresses each of the paragraph B functions, although it does so without specific discussion as to each function.

the decision.  20 CFR §§ 404.1520c(b)(2); 416.920c(b)(2).  Supportability refers to the extent to which a medical source has articulated support for his or her own opinion, while consistency refers to the relationship between the source's opinion and other evidence in the medical record.  Courts have found that "[o]ther than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness." *Freyhagen v. Comm'r of Soc. Sec. Admin.,* 2019 WL 3412616, at *4 (E.D. Mo. July 29, 2019) (*citing Mudge v. Saul*, 2019 WL 3412616, *4 (E.D. Mo. July 29, 2019)); *see also* 20 CFR § 404.1520c(b)(2) ("We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we considered medical opinions and prior administrative medical findings in [a claimant's] case record.").

Here, error, if any, by the ALJ in not specifically stating how persuasive she found Dr. Hernandez' opinion is harmless.  The ALJ noted that her determination regarding the non-severity of Plaintiff's mental impairments was consistent with Dr. Hernandez' opinion throughout.  The ALJ may not have used the words "persuasive" in discussing Dr. Hernandez' opinion, but she repeatedly referenced the consistency between her decision and Dr. Hernandez' report.  A legitimate inference may be drawn that the ALJ found Dr. Hernandez' report to be fully persuasive, including that it was consistent with, and supported by, the evidence of record.  The case should not "be remanded 'simply because the ALJ did not use magic words.'  Rather, '[r]emand is only appropriate where there is no indication the ALJ applied the correctly standard.'" *Cox v. Comm'r*, 2022 WL 834294, at *3 (N.D. Miss. Mar. 21, 2022) (*citing Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021)); *see also Frye v. Comm'r*, 2022 WL 1045719, *5 (M.D. Fla. April 7, 2022) ("The ALJ may not have used the word 'supportability,' but he discussed the record with respect to the

inconsistency of the opinions within the physicians own records, and the Court finds that to be adequate."); *Cueva v. Kijakazi*, 2021 WL 4192872, at *5 (E.D. Cal. Sept. 15, 2021) ("An ALJ need not recite any magic words to reject a physician's opinion where the record reveals specific, legitimate inferences that may be drawn from the ALJ's opinion justifying the decision not to adopt a physician's opinion.").   The ALJ specifically discussed the record evidence concerning Plaintiff's mental impairments and noted multiple times that the medical evidence was consistent with, and supported, both the ALJ's determination and Dr. Hernandez' opinion.   R.14-16.   I therefore recommend that any error in failing to say "persuasiveness" in relation to Dr. Hernandez' opinion is harmless error.   The ALJ embraced Dr. Hernandez' opinion in full, noting four times in the decision that the ALJ's findings were consistent with Dr. Hernandez' report, and thus found the opinion fully persuasive. The ALJ's failure to use the term "persuasiveness" does not hinder Plaintiff's from challenging whether the ALJ's reliance on Dr. Hernandez' opinion was supported by substantial evidence.   In this case, as set forth above, I find that the ALJ's determination in this regard was substantially supported.

## CONCLUSION

Upon consideration of the parties' submissions and the administrative record, I find that Plaintiff failed at the administrative level to carry her burden to demonstrate that she is disabled or more limited in her RFC than the ALJ found based on her mental impairments.   Accordingly, Defendant's administrative decision is supported by substantial evidence and should be affirmed. I thus respectfully **RECOMMEND** that Defendant's final administrative decision be **AFFIRMED**; that Plaintiff's Motion for Summary Judgment [DE 15] be **DENIED**; that Defendant's Motion for Summary Judgment [DE 18] be **GRANTED**; and that a final judgment be entered in Defendant's favor.

<u>**NOTICE OF RIGHT TO OBJECT**</u>

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with U.S. District Judge K. Michael Moore.  Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016). **Conversely, if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within five (5) days of the date of this Report and Recommendation.**

**DONE AND RECOMMENDED** in Chambers at Fort Pierce, Florida, this 10th day of August, 2022.

_____
SHANIEK MILLS MAYNARD
U.S. MAGISTRATE JUDGE

.